## BROWN *v*. GLOVER *et al.*

The court below erred in directing a verdict for the plaintiffs.
No. 3690. OCTOBER 12, 1923.

Equitable petition. Before Judge Summerall. Camden superior court. March 5, 1923.

J. H. Rudulph, as administrator of Jack Price, brought his petition against E. Brown for the purpose of recovering two described tracts of land and mesne profits, and to enjoin the defendant from trespasses on said lands. He alleged that his intestate died seized and possessed of these lands, and that the defendant had cut and removed therefrom 1000 pine logs suitable for sawmill purposes, of the value of $1000; 500 pine logs, more or less, suitable for piling, of the value of $2500; 5000 pine and cypress cross-ties, more or less, of the value of $2500; and 10,000 shingles, of the value of $50. The defendant was then engaged in cutting and removing the timber of said lands, and was insolvent; from which acts he prayed to have the defendant enjoined. He also prayed for judgment for damages, and to recover possession of said lands.

Robert Glover, Joseph Pinkney, and Wilimina Holiday intervened in the case, and alleged that Sarah Pinkney was their mother, that she died in 1918, that they were her only heirs at law, that there was no administration on her estate, and that at the

time of her death she was the only heir at law of Jack Price. For these reasons they were the true and lawful owners of the premises in dispute, which should be recovered for their use, and the costs of administration paid by them, which they stood ready and willing to pay. They prayed that the lands be decreed to be their undivided property.

By an amendment the plaintiff alleged that said intervenors were the only heirs at law of Sarah Pinkney, that said Sarah Pinkney was the sister and only heir at law of said Jack Price, that said parties were claiming adversely to the defendant, and that plaintiff desired the respective rights of the parties to be determined by the court for the protection of the administrator of the estate of Jack Price. This amendment was duly allowed.

In his answer the defendant admitted that he entered upon the premises and cut therefrom timber, but denied that he did so to the amount and value alleged by the plaintiff, and alleged the same did not amount to more than $200. He denied that his entry upon said lands was unlawful, and alleged he was the true and lawful owner thereof, and that the administration of the estate of Jack Price was stale as to him. Jack Price died in 1903, and his sole heir at law was Henry Mack Price who was the surviving child. At the death of Jack Price, Henry Mack Price entered into possession of said lands immediately. His possession was peaceable, uninterrupted, and notorious for more than seven years after the death of his father. While he was in possession said property was levied upon as his property by the sheriff, under an execution issued against him, and sold at public outcry on Jan. 4, 1910, to J. H. Rudulph, the plaintiff, and S. C. Townsend, his attorney, a deed thereto being accordingly made to them by said sheriff. They were in possession until Jan. 26, 1911, when they conveyed said lands to this defendant, who has continued to own and possess the same. It would be unconscionable to permit Rudulph as administrator to recover and sell said lands to this defendant and then proceed to subject them to said claim. Henry Mack Price paid off and discharged all indebtedness against Jack Price. Said estate owes no debts, and the only interest said administrator could have in said property would be to pay off and discharge the costs in the court of ordinary in said administration,

which defendant has offered to do. Said action was malicious and brought for the purpose of causing defendant loss and trouble.

On the trial the plaintiff admitted that the lands in dispute were originally the property of Jack Price, that a valid execution was issued from the city court of St. Marys against Henry Mack Price, which was levied upon said land as his property, and that the land was sold by the sheriff and bid in by Rudulph and Townsend, who quitclaimed their right and interest to the same to E. Brown. The defendant admitted that Rudulph was the duly qualified administrator of the estate of Jack Price, and that an order was granted by the court of ordinary authorizing the sale of the lands in dispute by said administrator.

E. Brown, in his own behalf, testified: that he knew Jack Price — an old colored man — and Henry Mack Price. Jack Price lived on the lands in dispute with his son, Henry Mack Price. Henry Mack Price continued to live there after his father's death. Jack Price said Henry Mack Price was his only son. He said the son was born before the war between the States, in the '60's. Henry Mack Price lived on the lands at the time they were sold to Rudulph and Townsend. The witness went into possession thereof after he bought them. Began using the timber; did not farm or rent out any of the land. The house in which Jack Price died is there now. Never knew the woman supposed to be Henry Mack Price's mother, except by what Mr. Cooner, who raised her, said. Heard Jack Price speak about his wife. He said she was carried away from him just before the war started, and after he was free he tried to get her back and then she was married again, and he took his son and brought him home. He said she was taken from Starke, Fla., about the time of the Civil War. Witness was present when this case was tried before. Jack Price said a person named Lowder bought his wife in slavery time and owned her. It seems that one of the Lowder girls married Higginbotham, who went to Florida, Lowder having given the woman to his daughter. Recalls substance of testimony on former trial of Cooner, who is now dead. He said Jack Price and this woman were married by a preacher, that they had two children but Price did not claim but one of them. The woman was carried to Florida, and after the war Price went to her and she refused to come back, and he brought Henry Mack back. He testified he knew Jack

Price was married to Henry Mack Price's mother by a preacher, and that Henry Mack was the issue of that marriage. He testified the woman took both children to Florida. He said the other boy's name was Andrew Jackson, but could not tell what became of him. Knew Bill Price, and he claims to be the son of Jack Price, and the woman he claims as his mother has a living husband. Jack Price claimed Henry was his son but the other boy was not.

Polly Brown testified for the defendant, that she knew Jack Price and Henry Mack Price, but did not know the latter's mother. Witness was bought in 1855, and has known Jack Price ever since then. Saw him until the war and again in '66. Asked him about his wife, and he said she was separated from him by white people — her mistress bought her and carried her to Florida. He said he had two children since freedom. Said he brought Henry back from Florida and left the other with his wife. Afterwards Jack Price bought some land from one Mallet, and he and this boy built a log house down there on this land. He told witness Henry was his boy. He said he was married lawfully by an ordained minister — a Methodist. Can not tell what the other boy was named. He said John — Henry and John were by the woman married to Jack Price by the Methodist preacher. Believes John and Andrew Jackson are the same. Bill Price told people that Jack Price was his father.

Emmett McElreath, for the defendant, testified that he went to Starke, Fla., in October, 1920, to make inquiry as to Andrew Jackson, alleged brother of Henry Price. Found no trace of his mother. Inquired of the clerk of the court. Mr. Cooner testified that it was Mr. Morgan who married one of the Lowders. Inquired among people who knew the Morgan family. Found no trace of Andrew Jackson Price.

J. H. Rudulph, for defendant, testified that he was administrator of the estate of Jack Price. There were no debts against it, except expenses of administration. Henry Dunwoody had him appointed administrator. He wrote witness the debt — a grocery account — had been paid. No heirs insisted on his bringing this suit.

The trial judge directed a verdict for the plaintiffs, upon which judgment was duly entered. The defendant moved for a new trial

on the general grounds; and on the ground that the court erred in directing the verdict, for the reason that the evidence, with all reasonable deductions and inferences therefrom, did not demand such verdict. The court overruled the motion for new trial, and error was assigned upon this judgment.

*Conyers & Wilcox, Emmett McElreath,* and *Cowart & Vocelle,* for plaintiff in error. *S. C. Townsend,* contra.

HINES, J. (After stating the foregoing facts.)

1. There was evidence before the jury which would have authorized them to find that Henry Mack Price was the son of the plaintiff's intestate; that, although he was the son of a slave and although his birth occurred before March 9, 1866, he was born within what was recognized as a state of wedlock; that in consequence he was the legitimate son of his father, and that he was sole heir at law of his father, to whom, on the death of the father, these lands descended. The evidence discloses that the father and this son lived on these lands until the father's death, and that the son continued to live thereon after his father's death. Both parties claim title under Jack Price, and the only question for determination is who has the better title. The administrator may recover possession of lands of his intestate from the heirs at law or purchasers from them; but in order to recover he must show upon the trial that either the property sued for has been in his possession and without his consent is held by the defendant, or that it is necessary for him to have possession for the purpose of paying the debts of his intestate, or making a proper distribution among the heirs at law. An order for sale or distribution granted by the ordinary, after notice to the defendant, is conclusive evidence of either fact. Civil Code (1910), § 3934. If Henry Mack Price was the son and heir at law of the intestate, the title of the latter vested in him at the death of his ancestor; and the administrator could not recover by simply showing that the title to the land was in the intestate when he died. *Holt* v. *Anderson,* 98 *Ga.* 220 (25 S. E. 496); *Green* v. *Underwood,* 108 *Ga.* 354 (33 S. E. 1009). But the defendant admitted that an order had been passed by the proper court of ordinary, authorizing the administrator to sell these lands. This order was prima facie evidence of the fact that a sale of these lands at the time the order was

granted was necessary for the purpose of paying the debts of the estate, although there was no evidence of personal notice to the defendant. *Davis* v. *Howard,* 56 *Ga.* 430; *Dixon* v. *Rogers,* 110 *Ga.* 509 (35 S. E. 781); *Stuckey* v. *Watkins,* 112 *Ga.* 268 (37 S. E. 401, 81 Am. St. R. 47); *Park* v. *Mullins,* 124 *Ga.* 1072 (53 S. E. 568); *Cochran* v. *Bugg,* 131 *Ga.* 588 (62 S. E. 1048). If the heir had personal notice of the application for the order, it would be conclusive against him; but the heir or his vendee may attack such order by showing that no personal notice of the application for such order had been served upon the heir, notwithstanding the fact that the order was passed after the usual citation had been published according to law. *Park* v. *Mullins,* supra. In the absence of such showing, the heir or his vendee will be concluded by the order of sale when the same is proved or its existence is admitted by the heir or his vendee. So if the present action, as finally amended, was one brought by the administrator to recover these lands for the purpose of selling them and for the benefit of the estate, he would be entitled to recover upon proof of the grant of an order by the court of ordinary authorizing him to sell these lands, and upon the admission of his adversary that his intestate owned them at the time of his death.

2. While the original action was one by the administrator to recover these lands as the property of his intestate, by an amendment he alleged that the intervenors claimed to be the owners of the premises in dispute, and that he desired that the respective rights of the parties thereto be determined by the court for his protection as administrator of the estate of his intestate, and that he might be legally discharged and relieved as such administrator. He prayed that the intervenors be permitted to interplead and set up any right they might have to said property, in order that the court might pass upon the respective claims to said property, and mold its judgment in accordance with the facts and legal rights of the respective claimants. This amendment changed the character of the original suit, and converted it into an action to settle the title of the contending claimants. The intervenors introduced no evidence tending to establish the facts set up in their intervention. The court directed a verdict in favor of the plaintiffs. Upon the rendition thereof, a judgment was entered that the intervenors recover from the defendant the premises in dispute.

In the absence of any evidence establishing the title in the intervenors to the premises, the court erred in directing this verdict.

*Judgment reversed. All the Justices concur.*